Michael B. Baylous, ABA No. 0905022
Jeffrey W. Robinson, ABA No. 0805038
LANE POWELL LLC
1600 A Street, Suite 304
Anchorage, Alaska 99501
Telephone:   907-264-3303
             907-264-3311
Email:       baylousm@lanepowell.com
             robinsonjw@lanepowell.com
Attorneys for Alaska Frontier Constructors, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA FRONTIER CONSTRUCTORS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> Defendant. | Case No. 3:24-cv-00259 <br><br> **COMPLAINT** |

For its Complaint against Defendant Travelers Casualty and Surety Company of America ("Travelers"), Plaintiff Alaska Frontier Constructors, Inc. ("AFC") alleges:

## I. PARTIES

1. AFC is an Alaska corporation with its principal place of business in Anchorage, Alaska. It is qualified in all respects to bring this action.

2. Travelers is a Connecticut corporation with its principal place of business in Hartford, Connecticut. At all material times, Travelers was selling insurance in Alaska and sold the insurance at issue in this lawsuit to AFC.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the Parties and the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the action is between citizens of different states.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (2), venue in this district is appropriate as the insured loss event at issue occurred in Anchorage, Alaska; AFC has suffered injuries, attendant to the bad faith manner in which Travelers has acted in Alaska; the majority, if not all, of the events and activities giving rise to the claims occurred in Alaska; and the majority of witnesses reside in or are found in Alaska.

## III. FACTS

**A. AFC's Failure to Follow Wire Transfer Protocols.**

5. AFC provides civil construction and support services throughout Alaska.

6. AFC works closely with Nanuq Inc. ("Nanuq") – another construction company – on various projects on Alaska's North Slope. AFC's management team is authorized to conduct certain financial transactions on Nanuq's behalf.

7. Nanuq is a wholly owned subsidiary of Kuukpik Corporation ("Kuukpik"), the Alaska Native village corporation for Nuiqsut, Alaska.

8. Kuukpik and Nanuq provide services to one another, which are charged between the two companies via an inter-company account that tracks and charges each company for services provided to the other. This account is settled periodically by one company making a cash payment to the other.

9. AFC effects certain payments from Nanuq to Kuukpik.

10. In mid-October 2023, management personnel of AFC, Nanuq, and Kuukpik communicated about the payment of amounts owed to Kuukpik by Nanuq.

11. On October 24, 2023, AFC's CFO Curt Dodd received an email appearing to be from Kuukpik's CFO Doug Koprowski, asking when the payment would occur. Unknown to CFO Dodd this email was from a third party impersonating CFO Koprowksi (the "Imposter") from an email address similar to CFO Koprowski's email address. CFO

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259)  Page 2 of 9

Case 3:24-cv-00259-SLG   Document 1   Filed 11/22/24   Page 2 of 9

Dodd responded to the Imposter, stating the transfer would occur on October 27. The Imposter responded via email to CFO Dodd, asking if the transfer could instead take place one day earlier. That email included ACH instructions to send the money to a bank in New Jersey, which deviated from prior ACH transfer between the companies.

12. CFO Dodd failed to verify the accuracy of the ACH instructions. Instead, he forwarded the Imposter's instructions to Nanuq Accounts Payable Specialist Anita St. Denis instructing her to set up an ACH transfer from Nanuq to Kuukpik for AFC Controller Mara Ferderber's approval. Controller Ferderber was included on that email.

13. Controller Ferderber initiated the ACH transfer on October 25, which caused Nanuq's bank to transfer $1,915,448.32 to the New Jersey bank account on October 26, as instructed by the Imposter. Controller Ferderber failed to verify the accuracy of the ACH instructions before initiating the transfer.

14. CFO Dodd and Controller Ferderber failed to verify with Kuukpik the ACH instructions, which differed from any prior instructions, including the last-minute change of bank accounts from a local Alaskan bank to one in New Jersey.

15. Because the AFC personnel who arranged and approved the payment on behalf of Nanuq failed to verify the payment, the bank account, and the payment instructions with Kuukpik, CFO Koprowski remained unaware of these events or that the Imposter had been communicating with AFC using an email impersonating him.

16. Not until November 21, 2023, did the companies learn the payment had been wired but not received by Kuukpik. By then, the money and the Imposter were gone.

**B.   Nanuq Claims against AFC, CFO Dodd, and Controller Ferderber.**

17. In letters dated January 30, 2024, and March 7, 2024, Nanuq's counsel demanded that AFC compensate it for money AFC, CFO Dodd, and Controller Ferderber caused to be transferred to the Imposter's bank account.

18. With those letters, Nanuq provided draft complaints alleging the facts set forth above and asserting causes of action for negligence and negligent supervision and

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.*, (Case No. 3:24-cv- 00259)   Page 3 of 9

Case 3:24-cv-00259-SLG     Document 1     Filed 11/22/24     Page 3 of 9

training. Nanuq asserted that AFC, CFO Dodd, and Controller Ferderber assumed a duty to use reasonable care in connection with making the transfers of funds from Nanuq to Kuukpik. Nanuq alleged that AFC, CFO Dodd, and Controller Ferderber breached that duty by failing to follow routine and appropriate anti-fraud procedures such as calling CFO Koprowski to confirm the new ACH instructions, and by failing to recognize and investigate "red flags," such as supposed last-minute change of bank accounts from a local bank in Alaska to one in New Jersey. Nanuq asserted that breaches of the duty of care caused Nanuq to suffer damages in the amount of at least $1,915,448.32, plus associated costs and fees.

**C.    AFC's D&O Coverage Provided by Travelers.**

19.    Travelers issued Wrap+ Policy No. 081-LB-10790225 for the policy period from September 1, 2023, to September 1, 2024, (the "Policy") to AFC as Named Insured. Among other coverages, it provides Private Company Directors and Officers Liability coverage (the "D&O Coverage").

20.    The Insuring Agreements of the D&O Coverage provides that Travelers will pay on behalf of:

> **A.**    the **Insured Persons, Loss** for **Wrongful Acts**, except for **Loss** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification;
>
> **B.**    the **Insured Organization, Loss** for **Wrongful Acts** which the **Insured Organization** pays to or on behalf of the **Insured Persons** as indemnification; and
>
> **C.**    the **Insured Organization, Loss** for **Wrongful Acts**, resulting from any **Claim** first made during the **Policy Period**, or if exercised, during the Extended Reporting Period or Run-Off Extended Reporting Period.

21.    The D&O Coverage contains the following definitions:

> **C.**    **Insured** means the **Insured Persons** and the Insured Organization.
>
> **D.**    **Insured Organization** means the **Named Insured** . . . .

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259)    Page 4 of 9

Case 3:24-cv-00259-SLG    Document 1    Filed 11/22/24    Page 4 of 9

E. **Insured Person** means any natural person who was, is or becomes a duly elected or appointed member of the board of directors, officer, or a functional equivalent to a member of the board of directors of officer of the **Insured Organization** . . . .

G. **Loss** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements, judgments, back and front pay, compensatory damages, punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to a court order or judgment.

M. **Wrongful Act** means:

1. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her capacity as such;

2. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, an **Insured Person** in his or her **Outside Position**;

3. any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by, or any matter asserted against, the **Insured Organization**; or

4. any matter asserted against an **Insured Person** solely by reason of his or her status as such.

22. The allegations of Nanuq's demand triggered coverage of AFC, CFO Dodd, and Controller Ferderber under the D&O Coverage's Insuring Agreements.

**D.  Travelers' Wrongful Denial of Coverage.**

23. Nanuq's claims were tendered to Travelers, and Travelers was provided copies of Nanuq's demand letters and draft complaints.

24. Travelers declined to defend or indemnify AFC, CFO Dodd, and Controller Ferderber. Travelers purportedly relied on an exclusion titled Data and Privacy

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259)    Page 5 of 9

Case 3:24-cv-00259-SLG    Document 1    Filed 11/22/24    Page 5 of 9

Exclusion with side A and Security Holder Carveback Endorsement ("Carveback Exclusion") that provides:

> [Travelers] will not be liable for **Loss** for any **Claim** based upon or arising out of:
>
> a. any loss or theft of, disclosure of, or unauthorized access to or use of, personal private or personal confidential information;
>
> b. any unauthorized access to a computer system;
>
> c. any use of authorized access to cause intentional harm to a computer system;
>
> d. any denial-of-service attack against a computer system;
>
> e. any introduction of malicious code into a computer system;
>
> f. failure to provide an authorized user with access to a computer system;
>
> g. any violation of law regarding the protection, use, collection, destruction, disclosure of, loss of, access to, or storage of personal private or personal confidential information; or
>
> h. the failure to provide notification required by law in connection with a. through g.;
>
> provided however, this exclusion will not apply to any **Claim**: (i) under Insuring Agreement A. . . . .

25. Travelers concluded:

> In the instant action, the $1,915,448.32 loss was a result of [an Imposter] gaining unauthorized access to AFC's computer system which allowed the [Imposter] to access AFC's CFO's email and send a spoofed email masquerading as Kuukpik's CFO and providing fraudulent ACH instructions. AFC followed the fraudulent ACH instructions and initiated the $1,915,448.32 transfer resulting in the loss. Pursuant to the Endorsement referenced above, there is no defense or indemnity coverage for loss resulting from the "unauthorized access to a computer system."

26. In wrongfully denying coverage, Travelers ignored that the Carveback Exclusion did not apply to claims under Insuring Agreement A, which provided coverage to CFO Dodd and Controller Ferderber.

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259) Page 6 of 9

Case 3:24-cv-00259-SLG   Document 1   Filed 11/22/24   Page 6 of 9

27. Travelers also ignored the Alaska Changes Endorsement in wrongfully denying coverage, which states, "A Claim will not be denied if a particular excluded cause of loss is secondary to a dominant covered cause of loss in an unbroken chain of events leading to the loss." This provision is consistent with Alaska law, which prohibits an insurer from denying a "claim if a risk, hazard, or contingency insured against is the dominant cause of a loss and the denial occurs because an excluded, risk, hazard, or contingency is also in the chain or causes but operates on a secondary basis." AS 21.36.096.

28. Travelers' "but for" analysis is incorrect. The dominant cause of the loss was AFC, CFO Dodd, and Controller Ferderber's failure to use reasonable care when initiating ACH transfers, not the Imposter's communication of ACH instructions.

29. These incorrect bases for denial were communicated to Travelers. In response, Travelers summarily concluded that "there is no trigger of Insuring Agreement A in this matter." Regarding the dominant cause, Travelers incorrectly asserted:

> The unbroken chain of events that lead to the loss in question clearly begins with the breach of AFC's computer system. But for AFC's computer system being breached, the bad actor never has the opportunity to send fraudulent payment instructions. AFC's alleged negligence in failing to follow proper procedures is secondary to the event which sets the unbroken chain of events into action – namely, the breach of the computer system.

Travelers again refused to cover the claim.

30. After Travelers abandoned its insureds, AFC, CFO Dodd, and Controller Ferderber, AFC negotiated a settlement and release of Nanuq's claims to avoid protracted and costly litigation for itself, CFO Dodd, and Controller Ferderber. In exchange for that release, AFC paid Nanuq $1,688,540.32.

## IV. CAUSES OF ACTION

### First Cause of Action: Breach of Contract – Duty to Defend

31. AFC, CFO Dodd, and Controller Ferderber were insured under the D&O Coverage of the Policy.

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259)    Page 7 of 9

Case 3:24-cv-00259-SLG    Document 1    Filed 11/22/24    Page 7 of 9

32. Nanuq made claims against AFC, CFO Dodd, and Controller Ferderber that were covered under the D&O Coverage of the Policy.

33. In breach of the Policy, Travelers refused to defend AFC, CFO Dodd, and Controller Ferderber against Nanuq's claims.

34. Travelers' refusal to defend against Nanuq's claims caused AFC damages in an amount in excess of $1,688,540.32, the precise amount to be proven at trial.

## Second Cause of Action: Breach of Contract – Duty to Indemnify

35. AFC, CFO Dodd, and Controller Ferderber were insured under the D&O Coverage of the Policy.

36. Nanuq made claims against AFC, CFO Dodd, and Controller Ferderber that were covered under the D&O Coverage of the Policy.

37. In breach of the Policy, Travelers refused to indemnify AFC, CFO Dodd, and Controller Ferderber for Nanuq's claims.

38. Travelers' refusal to indemnify AFC, CFO Dodd, and Controller Ferderber for Nanuq's claims caused AFC damages in an amount in excess of $1,688,540.32, the precise amount to be proven at trial.

## Third Cause of Action: Bad Faith

39. Travelers was contractually obligated pursuant to the term of the D&O Coverage of the Policy to defend and indemnify AFC, CFO Dodd, and Controller Ferderber against and for Nanuq's claims.

40. Because there is an implied covenant of good faith and fair dealing inherent in all insurance contracts, including the Policy, Travelers was obligated to act in good faith toward AFC, CFO Dodd, and Controller Ferderber.

41. Travelers lacked a reasonable basis for denying coverage.

42. Travelers' conduct in adjusting and denying coverage violated at least AS 21.36.125(a)(1), (4), (6) (15).

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.,* (Case No. 3:24-cv- 00259)    Page 8 of 9

Case 3:24-cv-00259-SLG    Document 1    Filed 11/22/24    Page 8 of 9

43. Travelers' refusal to honor its obligations under the Policy to AFC, CFO Dodd, and Controller Ferderber and its violation of AS 21.36.125 is bad faith conduct and violation of the implied covenant of good faith and fair dealing.

44. This bad faith conduct has damaged AFC, the exact amount to be proven at trial.

## V. PRAYER FOR RELIEF

AFC prays for the following relief:

a. Judgment against Travelers in an amount over $1,688,540.32, the exact amount to be determined at trial;

d. Costs and reasonable attorney's fees incurred in bringing this action; and

c. Any other relief as the Court may grant.

DATED: November 22, 2024

        LANE POWELL LLC
        Attorneys for Alaska Frontier Constructors, Inc.

        By /s/ Michael B. Baylous
          Michael B. Baylous, ABA No. 0905022
          Jeffrey W. Robinson, ABA No. 0805038

Complaint
*Alaska Frontier Constructors, Inc. v. Travelers Cas. and Sur. Co. of Am.*, (Case No. 3:24-cv- 00259)    Page 9 of 9

Case 3:24-cv-00259-SLG   Document 1   Filed 11/22/24   Page 9 of 9